Donna Lynn REIFF, a minor, by her parents and natural guardians, Donald A. Reiff and Dovie K. Reiff, in their own right,

v.

## CITY OF PHILADELPHIA.

Civ. A. No. 75–180.

United States District Court,
E. D. Pennsylvania.

June 25, 1979.

Melvin Alan Bank, Bank, Minehart & D'Angelo, Philadelphia, Pa., for plaintiff.

Louis F. Hinman, Asst. City Sol., City of Philadelphia, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

RAYMOND J. BRODERICK, District Judge.

This an action brought on behalf of a minor plaintiff against the City of Philadelphia seeking damages for an alleged violation of plaintiff's constitutional rights. Plaintiff claims that the City violated her Fourteenth Amendment rights by failing to provide her with adequate police protection.[1] She also alleges a pendent state law tort claim against the City. She asserts

---

1. The City had the authority to provide police protection pursuant to the Philadelphia Home Rule Charter which provides:

    The Police Department shall have the power and its duty shall be to perform the following functions:

    (a) Law Enforcement. It shall preserve the public peace, prevent and detect crime, police the streets and highways and enforce traffic statutes, ordinances and regulations relating thereto. The Department shall at all times aid in the administration and enforcement within the City of the Statutes of the Commonwealth of Pennsylvania and the ordinances of the City. 351 Pa.Code, § 5.5–200(a).

jurisdiction under 28 U.S.C. §§ 1331 and 1343(3).

The defendant, City of Philadelphia, has moved for summary judgment pursuant to Fed.R.Civ.P. 56. The City bases its motion solely on the pleadings. Neither party has filed an affidavit, and apparently no depositions have been taken. The Answers to Interrogatories filed with the Court contain only the names of potential witnesses. Therefore, the Court, in accordance with the established practice, has considered the City's motion for summary judgment as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *In re Penn Central Securities Litigation*, 347 F.Supp. 1327 (E.D.Pa.1972), *modified on other grounds*, 357 F.Supp. 869 (E.D.Pa.1973), *aff'd* 494 F.2d 528 (3d Cir. 1974); 6 J. Moore, *Federal Practice* ¶ 56.-02[3] at 2045 (2d ed. 1971) [hereinafter cited as Moore].

■ The test on a Rule 12(b)(6) motion to dismiss is whether the complaint states a cause of action upon which relief can be granted. A complaint should not be dismissed unless it appears to a certainty that the plaintiff is entitled to no relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); 2A Moore ¶ 12.08 at 2271–74.

The Court dismissed plaintiff's original complaint filed in this action. In the original complaint, plaintiff alleged that she had a remedy under 42 U.S.C. § 1983 and that the Court had jurisdiction under 28 U.S.C. § 1343(3). At that time, a municipality was not deemed to be a "person" within the meaning of § 1983 under *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The complaint was dismissed on that ground and on the further ground that plaintiff had failed to plead with sufficient particularity a factual basis for the alleged constitutional violation as required by *Gittlemacker v. Prasse*, 428 F.2d 1 (3d Cir. 1970). Leave to amend the complaint was granted for the purpose of curing the deficient allegations. *Reiff v. Commonwealth*

*of Pennsylvania*, 397 F.Supp. 345 (E.D.Pa. 1975).

Since our earlier decision, the Supreme Court has ruled that a City is a "person" within the meaning of § 1983 and can be sued under that section when the unconstitutional action alleged implements or executes a City policy or custom. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611. This action is therefore being considered as one brought under § 1983, particularly since the complaint alleges that the City pursued a policy of providing inadequate police protection by refusing to respond to calls based upon mere suspicion of a crime and failing to provide adequate protection in a high crime area. The question presented, therefore, is whether the plaintiff has stated a claim upon which relief can be granted by alleging that the City's policy of failing to provide adequate police protection deprived the plaintiff of a constitutional right.

The amended complaint alleges that on February 5, 1973, the minor plaintiff, while a business visitor in a shop known as Peasant Garb, 223 South 17th Street, Philadelphia, Pennsylvania, was shot and wounded by one Kenneth Taylor, a/k/a Kenneth Davis, who, in the company of and in conspiracy with one Angela Frierson and one William Jones, was then robbing individuals in the shop at gunpoint. As a result of a gunshot wound inflicted by Taylor, the minor plaintiff is paralyzed from the chest down and is permanently confined to a wheelchair. Plaintiff alleges that the City is liable in damages to her on the basis of her allegation that the City failed to provide adequate police protection. She bases her claim of inadequate police protection on the allegation that the Police Department has a policy of not responding to calls for assistance unless and until a crime has actually been committed and on the alleged failure to provide adequate police protection in a high crime area.

Plaintiff contends that the conduct of the defendant, City of Philadelphia, denied to her the right to equal protection of the laws in violation of § 1 of the Fourteenth Amendment, deprived her of the right to life and liberty without due process of law in violation of § 1 of the Fourteenth Amendment, deprived her of her rights, privileges, and immunities guaranteed by the Constitution and laws of the United States, deprived her of her "right" to a reasonably safe place in which to live and carry on the ordinary pursuits of life, deprived her of her "right" to lead a normal and healthy life, and deprived her of her "right" to reasonable and adequate protection from criminal assault.

■ Construing the amended complaint in the light most favorable to the plaintiff, it basically alleges that the police protection afforded her was inadequate. This Court has been unable to find any precedent supporting plaintiff's contention that inadequate police protection is a violation of any constitutional right. In her memorandum of law in opposition to the defendant's motion, plaintiff contends that police protection is an essential governmental service and that failure to provide such essential governmental service is a constitutional violation. This contention must be rejected.

The Supreme Court of the United States has repeatedly pointed out that one must look to the Constitution itself in order to determine whether it explicitly or implicitly creates a constitutional right. In *Lindsey v. Normet*, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972), in rejecting the plaintiffs' contention that a state law governing landlord-tenant relationships violated the due process clause of the Fourteenth Amendment, the Court said:

> We do not denigrate the importance of decent, safe, and sanitary housing. But the Constitution does not provide a remedy for every social and economic ill. We are unable to perceive in that document any constitutional guarantee of access to

dwellings of a particular quality . . . . Absent constitutional mandate, the assurance of adequate housing and the definition of landlord-tenant relationships are legislative, not judicial functions.

*Id.* at 74, 92 S.Ct. at 874.

In *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), though the Court acknowledged that education is perhaps the most important function of government, the Court rejected the plaintiffs' argument that they had a constitutional right to education by saying:

> [T]he importance of a service [to be provided] by the State does not determine whether it must be regarded as fundamental for purposes of examination under the Equal Protection Clause. [*Id.* at 30–31, 93 S.Ct. at 1295]. . . . Thus, the key to determining whether education is "fundamental" is not to be found in comparisons of the relative societal significance of education as opposed to subsistence or housing. Nor is it to be found by weighing whether education is as important as the right to travel. Rather, the answer lies in assessing whether there is a right to education explicitly or implicitly guaranteed by the Constitution. . . .
>
> Education, of course, is not among the rights accorded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected.

*Id.* at 34–35, 93 S.Ct. at 1297.

The Constitution does not explicitly or implicitly provide a right to adequate police protection. Plaintiff cites no authority supporting her claim that it does.

■ The fact that the United States Constitution does not provide a right to adequate police protection does not mean that whenever a state or municipality undertakes to provide such a service it may do so in a manner which violates a constitu-

tional right. The Fourteenth Amendment to the Constitution provides:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

This means that the City, as an arm of the State, must not violate the guarantees of due process and equal protection in providing any service. This Court has construed the amended complaint in the light most favorable to the plaintiff, and, though the plaintiff has been given the opportunity to amend her complaint to set forth with particularity the factual basis for her alleged constitutional violation, she does not allege any constitutional due process violation anchored in the Constitution, nor does she allege any constitutional equal protection violation such as a failure to provide her with police protection because of her race, her color, or her creed.

The plaintiff's allegation that the Police Department pursued a policy of not responding to calls for assistance unless and until a crime was actually committed or her allegation that the City failed to provide adequate police protection in a high crime area might well support a claim that such a policy is unwise, but such allegations do not rise to the level of a constitutional violation.

Plaintiff's amended complaint also contains a pendent state law tort claim based on the City's alleged failure to provide adequate police protection. Federal courts have the power to adjudicate claims based on state law if there is a federal claim of sufficient substance to confer subject matter jurisdiction on the court. *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 196 (3d Cir. 1976). However, as stated in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), if the federal claims are dismissed before trial, the state claims should also be dismissed. We shall, therefore, in the exercise of our discretion, decline to assert jurisdiction over plaintiff's state law claim.

The defendant's motion seeks to have plaintiff's pendent state law tort claim dismissed for failure to state a cause of action under Pennsylvania law. The Court has been advised that the plaintiff filed a state law tort claim alleging inadequate police protection in the Common Pleas Court of Philadelphia County, No. 4591 (C.P. Phila, County, decided April 19, 1976), and that the Superior Court of Pennsylvania recently affirmed the Common Pleas Court's dismissal of the action for failure to state a claim upon which relief could be granted. *Reiff v. Attwood*, October Term, 1977, No. 1623 (Pa.Super.Ct., decided May 13, 1977).[2] The defendant also contends that this state court decision is *res judicata* of plaintiff's state law claim.[3] Since we have declined to

---

2. Prior to the decision in *Ayala v. Philadelphia Board of Education*, 453 Pa. 584, 305 A.2d 877 (1973), abolishing governmental immunity for municipalities, the Pennsylvania Supreme Court held that municipalities were not liable for failure to provide adequate police protection on the ground that municipalities were entitled to a governmental immunity when performing a governmental function. *Brogan v. City of Philadelphia*, 346 Pa. 208, 29 A.2d 671 (1943). Since *Ayala*, the Supreme Court of Pennsylvania has not considered the tort liability of municipalities for failure to provide adequate police protection, but there are lower court decisions since *Ayala, supra*, which hold, in accordance with the majority view, that municipalities are not liable for inadequate police protection in the absence of some special duty

owed the plaintiff. *Reiff v. Attwood, supra; Lucas v. City of Philadelphia*, No. 4130 (C.P., Phila. County, decided Aug. 16, 1978).

3. The Common Pleas Court dismissed plaintiff's state court action on preliminary objections in the nature of a demurrer. Pennsylvania law governs the *res judicata* effect of that dismissal. *Local No. 1 (ACA) v. International Brotherhood of Teamsters*, 419 F.Supp. 263, 270 (E.D.Pa.1976). Under Pennsylvania law, a final valid judgment on the merits by a court of competent jurisdiction is *res judicata*, provided there is identity of the parties and of the subject matter. *Keystone Building Corp. v. Lincoln Savings and Loan Assn.*, 468 Pa. 85, 360 A.2d 191, 194 (1976) (and cases cited therein). An order sustaining a demurrer and judgment

exercise pendent jurisdiction over plaintiff's state law tort claim, we do not decide whether plaintiff has stated a cause of action in tort under Pennsylvania law, and we do not decide the *res judicata* effect under Pennsylvania law of the state court's decision.

Accordingly, an order will be entered dismissing plaintiff's amended complaint.

entered thereon is a final judgment. *Love v. Temple University*, 422 Pa. 30, 220 A.2d 838 (1966); *Haines Industries, Inc. v. City of Allentown*, 237 Pa.Super. 188, 355 A.2d 588 (1975).